IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VAHN JALADIAN,

      Plaintiff,                      No. CIV S-04-1304 LKK CMK P

    vs.

C.A. HUGHES, et al.,

      Defendants.              FINDINGS & RECOMMENDATIONS

_____/

       Plaintiff is a state prisoner, without counsel, prosecuting this civil rights action against defendants Hughes, Rodriguez, Butler, Cribbs, Chandler, Grannis, and Brown.  The case is before the undersigned pursuant to Local Rule 302(c) for findings and recommendations on defendants' motion for summary judgment.  Fed. R. Civ. P 56(c).

**I.    Standard of Review**

       On a motion for summary judgment pursuant to Rule 56(c), the court must accept the evidence of the non-moving party as true and draw all reasonable inferences of fact in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears the burden of demonstrating that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P 56(c)).  If the moving party

1  meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue
2  as to any material fact does actually exist. See Matsushita Elec. Indus. Co. V. Zenith Radio
3  Corp., 475 U.S. 574, 586 (1986). The party opposing summary judgment may not rest on
4  conclusory allegations, but must set forth specific facts showing that there is a genuine issue of
5  material fact. See Mosher v. Saalfeld, 589 F.2d 438, 422 (9th Cir. 1978)(involving a pro se
6  litigant); see also Anderson, 477 U.S. at 586 n. 11. When the record taken as a whole could not
7  lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material
8  fact for trial. See Matsushita, 475 U.S. at 587.
9       On February 1, 2005, the court advised plaintiff of the requirements for opposing a
10 motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154
11 F.3d 952 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

12 **I.    Background**

13      Taken in a light most favorable to plaintiff, the facts are as follows. Plaintiff is an
14 inmate at California State Prison-Solano (CSP-Solano). Plaintiff suffers from chronic back pain,
15 which was caused by an accident several years prior to plaintiff's incarceration. Plaintiff's back
16 pain had not bothered him for several years prior to his incarceration; he had worked washing
17 windows in high rise buildings. Because plaintiff's back had not bothered him for years, plaintiff
18 did not tell prison officials when he arrived at CSP-Solano that he suffered from back pain which
19 restricted the work he could do.
20      On April 22, 2003, plaintiff began working as a server in the CSP-Solano dining
21 hall. Server duties are very light; the easiest in the dining hall. Server duties included handing
22 out milk cartons and utensils. No heavy lifting was required.
23      On June 26, 2003, a doctor issued plaintiff a light duty chrono, stating that
24 plaintiff should not work around fumes or chemicals and should not lift more than fifteen pounds.
25 Approximately three weeks later, on July 15, 2003, defendant Cribbs ordered plaintiff to stack
26 full milk crates because the dining hall was short staffed due to a lock down. Plaintiff complied

with defendant Cribbs's order.  While carrying the full crate, Plaintiff slipped on some water and fell, re-injuring his back.  Defendant Cribbs summoned medical help when he was advised of the accident.[1]

Plaintiff was seen in the medical clinic, where he was assessed with low back strain and degenerative disc disease.  Plaintiff was given pain medication, ordered to lay-in for a week, and told to follow-up in a week.  When plaintiff returned to the clinic on July 22, 2003, he was assessed with chronic back pain aggravated by a fall.  He was also counseled by the doctor on how to deal with his existing chrono, which limited his ability to lift.

Two weeks later, plaintiff asked, for the first time, to be declared disabled.  On August 8, 2003, a doctor verified that plaintiff's mobility was permanently impaired because plaintiff walked with a cane, but found that his disability did not affect his placement doing light work as a server in the dining hall.  A new light-duty chrono was written, which still restricted plaintiff from lifting more than fifteen pounds and also added a restriction on standing for more than thirty minutes at a time.  On September 4, 2003, a classification committee found plaintiff's work assignment appropriate and returned him to work in the dining hall when his medical lay-in ended.

A month later, an MRI showed moderately severe disk changes in plaintiff's spine. Plaintiff requested to have his light-duty chrono changed, but the doctor deferred the decision pending a neurosurgical evaluation.  Three weeks later, an updated chrono was written that consolidated plaintiff's previous chronos, with some modification. The new chrono stated that plaintiff required lower bunk/tier housing; a cane; and light duty with standing no more than

---

[1] Although plaintiff filed a grievance after this incident claiming that he was forced to continue working or be fired (Def.'s Statement of Undisputed Facts, Ex A-1, 10-17), he states in his Opposition to Defendant's Motion for Summary Judgment statement of the case that Officer Cribbs summoned medical assistance when advised of the accident, and does not indicate that defendant forced him to keep working after his fall. (Doc. 40, pg 5.)  The declarations of other inmates reflect that as soon as plaintiff fell, a wheel chair was called to remove him. (Def.'s Statement of Undisputed Facts, Ex. A-1, 24, 25.)

twenty minutes at a time, no work around fumes, no lifting more than ten pounds, and no stooping, bending or squatting.  The doctor did not find that plaintiff was totally disabled and unable to work due to his back problem.  The chrono noted that plaintiff had stiffness in his hands, but did not provide any related work related restrictions and recommended a clerical assignment.  The recommendation of a clerical assignment was apparently done without taking into account plaintiff's low reading score—somewhere between first and second grade levels.

When plaintiff returned to work on November 23, 2003, defendants Cribbs and Chandler assigned plaintiff to pass out plastic eating utensils because of his light duty chrono and his work restrictions.  This work required that plaintiff sit on empty milk crates and pass out utensils to other inmates.  Plaintiff complied with his assigned duty.  However, he had to bend over to pick up spoon refills from the floor.  Plaintiff informed his supervisors that his hands were cramping and he was having pain in his back from having to bend over to refill the utensil tray and picking up the small plastic utensils.

Plaintiff attempted to show defendant Cribbs his chrono which stated no bending and that plaintiff had stiffness in his hands.  Defendant Cribbs refused to look at plaintiff's chrono.  Plaintiff never refused to do the work.  Instead, he informed his supervisors that he was in severe pain and could not continue.  Plaintiff was removed from his assignment as a server and placed on non-credit earning status for refusing to perform work that he was able to do.

**III.  Discussion**

Plaintiff states that, by ignoring his chronos, defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  Plaintiff contends that he was retaliated against in violation of the First Amendment by defendants Hughes, Butler and Rodriguez when he insisted that defendant Cribbs file a claim for worker's compensation benefits on plaintiff's behalf.  Plaintiff also alleges that defendants discriminated against him in violation of the Americans with Disabilities Act (ADA) by requiring him to do work which he was unable to do, even with a reasonable accommodation. Defendants contend that they are

4

entitled to summary judgment on all of plaintiff's claims.

      A.      <u>Eighth Amendment Claim</u>

Plaintiff claims that defendants were deliberately indifferent to his serious medical needs when they ignored his work restrictions. Prison officials who act with deliberate indifference to an inmate's serious medical needs violate the Eighth Amendment. See <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). "Prison officials are deliberately indifferent to a prisoner's serious medical needs if they deny, delay, or intentionally interfere with medical treatment." <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 201 (9th Cir. 1989). A prison official who interferes with the instructions of a physician may be liable for an Eighth Amendment violation. See <u>Hamilton v. Edell</u>, 981 F.2d 1062, 1066-67 (9th Cir. 1992) (overruled on other grounds).

Defendants maintain that the decision to assign plaintiff to work as a server did not evidence deliberate indifference to his medical needs because it was made in reliance on the opinion of the prison medical staff that plaintiff had no medical restrictions limiting his ability to work as a server. Defendants may be correct that assigning plaintiff to work as a server in the dining hall in reliance on the medical staffs' opinions does not evidence deliberate indifference. The inquiry here, however, is slightly different. Here, the undersigned must consider whether there exists a disputed issue of fact concerning whether defendants required plaintiff to perform work in the dining hall that was inconsistent with his medical restrictions.

Defendants have presented evidence that plaintiff was regularly examined by medical staff at CSP-Solano. (Def.'s Statement of Undisputed Facts, Ex. A-1, 18-19) Medical staff found plaintiff to have restrictions due to chronic back pain; on June 26, 2003, plaintiff was issued the first of several light-duty chronos restricting his lifting. The medical staff found no medical restrictions limiting plaintiff's ability to work as a server. (See <u>id.</u>) Defendants have presented evidence showing that plaintiff's job duties as a server were consistent with his medical restrictions. (See <u>id.</u>, Ex. C, 3.) Defendant Cribbs was aware of plaintiff's work restrictions. (See <u>id.</u>)

1. July 15, 2003 Incident

Defendants have submitted evidence that defendant Cribbs did not disregard plaintiff's light duty chrono and order him to stack full milk crates on July 15, 2003. Defendants also point out that plaintiff has presented evidence which tends to contradict his assertion that he was ordered to lift full milk crates due to a staff shortage; the declaration of inmate McKellan states that McKellan was the "linebacker"[2] on duty that morning and that he was present. (Pl.'s Opp'n to Def.'s Mot. Summ. J., page 32 of 45.) McKellen asserts that "the C.O. had [plaintiff] serve milk....[plaintiff] was having problems lifting the crates of milk." (See id.)

In response, plaintiff asserts that "linebackers...are not the only people replacing food items and stacking food..." (Pl's Response to Def.'s Reply to Opp'n to Mot. For Summ. J., 2:14-16.) "Every inmate working on the food service line is continuously order [sic] to do different job's [sic] as needed..." Although plaintiff's proffered statement from McKellan indicates that a linebacker was present on July 15, 2003, McKellan's statement does not indicate that plaintiff was not ordered to carry full milk crates. Instead, taken in a light most favorable to plaintiff, it tends to indicate that plaintiff's assigned task for that morning did include carrying full crates of milk.

Therefore, the undersigned finds that there is a factual dispute over whether defendant Cribbs' deliberately ignored the opinions of medical staff and ordered plaintiff to perform work which was not consistent with plaintiff's medical restrictions on July 15, 2003. Plaintiff has not, however, described actions involving any of the other named defendants in the July 15, 2003 incident. There can be no liability under § 1983 unless there is an affirmative link between a defendant's actions and the claimed deprivation. See Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, the undersigned finds that plaintiff has failed to state an Eighth Amendment claim stemming from the July 15, 2003 incident against defendants Hughes, Rodriguez, Butler,

---

[2] An inmate assigned to bring refills of supplies, such as full crates of milk, to those on the server line.

Chandler, Grannis and Brown.

### 2. November 23, 2003 Incident

After plaintiff's July 15, 2003 accident, he was on lay-in for several weeks. He was seen several times by medical staff and had been issued a new chrono, which, among other things, limited him to standing for no more than twenty minutes, no bending and no lifting more than ten pounds. (Def.'s Statement of Undisputed Facts, Ex. A-1, 21.) Plaintiff returned to work on November 25, 2003. He was ordered to pass out plastic utensils. (See id. Ex. C, 11.) Plaintiff states that he was sitting on a milk crate, on the floor, passing out plastic spoons. (Compl., 3A.) Plaintiff states that bending over to pick up the spoon refills from the floor caused his lower back and hands to cramp. (See id.) However, the evidence shows that servers may place boxes containing utensils on empty crates so that no bending, stooping, reaching, or twisting is required. Defendants have presented evidence showing that plaintiff's medical restrictions did not preclude him from lifting and grasping small objects, such as plastic utensils. Plaintiff has not presented evidence showing that he was unable to complete this task or any evidence that, on November 23, 2003, he was asked to do any work which was inconsistent with his medical restrictions. See Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S.574, 586 (1986) (once defendant meets initial burden of informing court of the basis for his motion and identifies portions of the record which he believes demonstrates an absence of a genuine issue of material fact, the burden shifts to plaintiff to establish that an issue of fact does in fact exist). The undersigned cannot find that plaintiff has demonstrated that defendants were deliberately indifferent to his serious medical needs when they required him to perform his job duties as a server on November 23, 2003. Therefore, the undersigned finds that plaintiff cannot establish a cognizable Eighth Amendment claim with regard to the November 23, 2003 incident.

///
///
///

B.      Retaliation Claim

Plaintiff contends that defendants[3] took plaintiff to "Unit Classification Committee" in retaliation for forcing defendant Cribbs to file a worker's compensation claim on plaintiff's behalf for the July 15, 2003 fall. Plaintiff asserts that defendants Hughes, Butler and Rodriguez placed plaintiff on C-Status (non-credit earning status) in retaliation for plaintiff insisting that defendant Cribbs file a worker's compensation claim for plaintiff for his July 15, 2003 fall.

Within the prison context, a viable claim of retaliation entails five basic elements: "(1) an assertion that a state actor took some adverse action against an inmate(2) because of (3) that prisoner's protected conduct and that such action (4) chilled plaintiff's First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).  The court must afford appropriate deference to prison officials in the evaluation of the proffered legitimate correctional reasons for conduct alleged to be retaliatory.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  The burden rests on plaintiff to demonstrate that there were no legitimate correctional purposes motivating the actions of which he complains.  See id. at 808.

Filing prison grievances, including worker's compensation claims, is a protected activity, see Rhodes, 408 F.3d at 568, and placement on non-credit earning status is clearly an adverse action.  The issue therefore becomes whether referral to classification committee advanced a legitimate correctional goal and whether it chilled plaintiff's exercise of his rights.

Defendants contend that plaintiff was taken to Unit Classification Committee pursuant to being charged with a disciplinary violation of Cal. Code Regs. § 3041(a) (CDC 115) and accompanying request that plaintiff be seen by a classification committee. (Def.'s Statement

---

[3] It is not clear from a reading of plaintiff's complaint, who plaintiff believes took him to Unit Classification Committee in retaliation for his request that a worker's compensation claim be filed.  Plaintiff states "...in retaliation for filing these papers Mr. Jaladian was given another form of punishment in that he was taken to Unit Classification Committee." (Compl., 4.)

8

of Undisputed Facts, A-1, 33.)

On November 25, 2003, plaintiff reported for his job as a server and was directed to pass out plastic utensils. (Def.'s Statement of Undisputed Facts, Ex. C, 6.) Plaintiff refused, stating that he could not work. (See id.) Plaintiff had not been showing up for work. (See id.) Defendant Butler informed plaintiff that if he did not appear for work, he would be disciplined. (See id.) When plaintiff refused to pass out plastic utensils later that night, plaintiff was charged with a disciplinary violation. (See id.) At the classification committee, plaintiff was found guilty and placed on C-Status. (See id., Ex. C-5.)

Plaintiff bears the burden of proving that "there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808. In his complaint, plaintiff admits that he refused to perform his work as a server on November 25, 2003. Plaintiff offers no evidence to support his claim that his referral to a classification committee was not in furtherance of a legitimate correctional goal—disciplining him for refusing to perform his job duties, which he had been determined medically able to do. The undersigned therefore finds that plaintiff has not submitted evidence raising a triable issue of fact with respect to his retaliation claim regarding his referral to a classification committee and subsequent placement on C-Status.

    C.    ADA Claim

Plaintiff asserts that defendants Hughes, Butler and Rodriguez discriminated against him in violation of Title II of the ADA by removing him from his job as a server based on his disability on November 23, 2003.

In order to establish a prima facie case of Title II discrimination, plaintiff must demonstrate that: (1) his impairment substantially limits one or more major life activities, or defendants regard his impairment as being substantially limiting; (2) with or without reasonable modifications to prison work assignment policies, he meets the essential eligibility requirements for participation in the work program; (3) he was excluded from participation or otherwise discriminated against with regard to the prison's work program; and (4) such exclusion or

9

1  discrimination was because of his disability.  See Lovell v. Chandler, 303 F.3d 1039, 1052 (9th
2  Cir. 2002); see also, Pennsylvania Dept. Corrections v. Yeskey, 524 U.S. 206 (1998) (holding that
3  the ADA applied to state prisons).
4           As an initial matter, the court notes that individual defendants may not be sued in
5  their individual capacities under Title VII of the ADA.  See Kentucky v. Graham, 473 U.S. 159,
6  166 (1985).  Therefore, plaintiff's claim for damages against defendants in their individual
7  capacities should be dismissed.
8           Plaintiff argues that he could not meet the essential requirements of his work
9  assignment due to his disability.  Accordingly, by virtue of plaintiff's own argument, his ADA
10 claim must fail—he cannot show that he was able to meet, with or without reasonable
11 modifications, the essential eligibility requirements for working as a server.  See Lovell, 303 F.3d
12 at 1052.
13          Even assuming that plaintiff could show that he met the essential requirements for
14 his work assignment, plaintiff cannot show that he was excluded from work assignments due to
15 his disability.   An ADA claim against a state entity requires a showing of discriminatory intent,
16 which in ADA cases amounts to deliberate indifference.  See Ferguson v. City of Phoenix, 157
17 F3d 668, 674 (9th Cir. 1998).  Deliberate indifference requires both knowledge that a harm to a
18 federally protected right is substantially likely and a failure to act upon that likelihood.  See
19 Duvall v. County of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001).  The first element is satisfied if
20 a public entity had notice that an accommodation was required.  See id.  Here, defendants have
21 shown that they did not have notice that an accommodation was required.  Defendants have
22 shown that they were providing plaintiff with light duty work, which was consistent with his
23 medical restrictions.  (Def.'s Statement of Undisputed Facts, Ex. A-1, 21 and Ex C.)
24          Additionally, defendants have put forth evidence demonstrating that plaintiff was
25 removed from his work assignment as a server because he failed to appear at work on November
26 23, 2003 and, when he did appear, refused to perform his assigned task, which his physicians had

opined he was capable of performing. (Def.'s Statement of Undisputed Facts, Ex. C-5.)  When defendants attempted to assign plaintiff to an Adult Basic Education class so that plaintiff could be qualified for clerical work, plaintiff refused to participate and was so disruptive that he was removed from the class. (See id., Ex. A-1, 63-67.)  The undersigned finds that plaintiff cannot establish a prima facie case under Title VII of the ADA and recommends summary judgment on this claim.

### D.  Qualified Immunity

Defendants contend that they are entitled to qualified immunity from plaintiff's § 1983 claims.  The first step in a qualified immunity analysis "is to consider the materials submitted in support of, and in opposition to, summary judgment in order to decide whether a constitutional right would be violated if all facts are viewed in favor of plaintiff."  Jeffers v. Gomez, 267 F.3d 895, 909 (9th Cir. 2001).  If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).

As discussed above, the undersigned finds that there is a disputed issue of material fact as to whether Defendant Cribbs was deliberately indifferent to plaintiff's serious medical needs on July 23, 2003.  This disputed issue of material facts precludes a finding that defendant Cribbs is entitled to qualified immunity.  However, the undersigned finds that plaintiff has failed to establish a violation of his constitutional rights with regard to the November 23, 2003 Eighth Amendment claim or the retaliation claim.  Plaintiff has not established a constitutional right to a prison job.  See Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985) (citing Hoptowit v. Ray, 682 F.2d 1237, 1254-55 (9th Cir. 1982).  Accordingly, defendants are entitled to qualified immunity on these issues.

### E.  No Right to Grievance Procedure

Finally, to the extent that plaintiff seeks relief against defendant Grannis and defendant Brown (or any other defendant) for failure to grant his prison appeal, this claim must

fail.  There is no constitutional right to a grievance procedure.  See Mann v. Adams, 855 F.2d 639 (9th Cir. 1988).

### IV. Conclusion

Based on the foregoing, IT IS RECOMMENDED that defendants' motion for summary judgment (doc. 32) be granted in part and denied in part.

1. Defendants' motion for summary judgment regarding plaintiff's claim that defendant Cribbs violated his Eighth Amendment rights on July 15, 2003 is denied;

2. Defendants' motion for summary judgment regarding plaintiff's claim that defendants Hughes, Rodriguez, Butler, Chandler, Grannis and Brown violated his Eighth Amendment rights on July 15, 2003 is granted;

3. Defendants' motion for summary judgment on plaintiff's claim that defendants violated his Eighth Amendment rights on November 23, 2003 is granted;

4. Defendants' motion for summary judgment on plaintiff's retaliation claim is granted; and

5. Defendants' motion for summary judgment on plaintiff's discrimination claim under Title VII of the ADA is granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   June 8, 2006

                                           /s/ Craig M. Kellison
                                           United States Magistrate Judge