IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAHAN JALADIAN, | No. CIV S-04-1304-LKK-CMK-P |
| Plaintiff, | |
| vs. | <u>ORDER</u> |
| CRIBBS, | |
| Defendants. | |
| _____/ | |

Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to court order, the parties have submitted pre-trial statements. Upon review of the statements and the remainder of the file, and good cause appearing therefor, this court makes the following findings and orders:

<u>Background</u>

This action proceeds on plaintiff's original complaint, filed July 7, 2004. On January 6, 2005, the court determined service was appropriate for all defendants named in the complaint. Defendants filed their answer to the complaint on April 12, 2005. On October 17, 2005, defendants filed a motion for summary judgment. In an order issued on September 11, 2006, the court granted in part and denied in part defendants' motion for summary judgment.

1  The court granted defendants' motion for summary judgment as to plaintiff's claim that
2  defendants Hughes, Rodriguez, Butler, Chandler, Grannis and Brown violated plaintiff's Eighth
3  Amendment rights on July 15, 2003, plaintiff's claim that defendants violated his Eighth
4  Amendment rights on November 23, 2003, plaintiff's retaliation claim, and plaintiff's
5  discrimination claim.  However, summary judgment was denied as to plaintiff's claims that
6  defendant Cribbs violated his Eighth Amendment rights on July 15, 2003.  Therefore, the only
7  remaining defendant is Cribbs, and the only remaining claim is plaintiff's Eighth Amendment
8  claim of deliberate indifference to a serious medical need against Cribbs stemming from the
9  incident on July 15, 2003.  A further scheduling order was issued on September 14, 2006, setting
10 the dates for the parties pretrial statements and setting the pretrial conferences, to be conducted
11 on the file only.
12         This case involves an incident which occurred on July 15, 2003, at California
13 State Prison - Solano.  The parties agree on the general nature of the incident.  Generally, the
14 parties agree that on the date in question, plaintiff, who had a medical chrono which indicated he
15 should be assigned to a light duty job, including no lifting of heavy objects, lifted a crate of milk.
16 The parties, however, do not agree on why plaintiff lifted the crate of milk, whether or not
17 defendant Cribbs ordered plaintiff to lift the crate, and the extent and nature of the injuries
18 plaintiff sustained.
19         Plaintiff's complaint states the following:

> On July 14, 2003, Mr. Jaladian reported to his job assignment in the kitchen on the 2nd watch shift on Facility 2.  Mr. Jaladian had shown his job supervisor c/o Cribbs his medical chrono on a prior occasion that stated that he had degenerative chronic back pains ... [and] that Mr. Jaladian was to be assigned "light duty work," "NO" standing more than 20 minutes "NO" working around fumes, "NO" stooping, squatting, and "NO" lifting more than 10 pounds.  This doctor ordered medical chrono also stated that Mr. Jaladian should be assigned to a clerical or porter type work assignment dated "June 24, 2003."  despite Mr. Jaladian presenting this medical chrono to his supervisor c/o Cribbs and c/o Cribbs reading the chrono and being fully aware of all the medical restrictions, c/o Cribbs "ordered" Mr. Jaladian to do a job that was clearly out of

the limitations of his doctor's orders by ordering him to stack full crates of milk which caused Mr. Jaladian to seriously injure his already injured back, and violating the order's of Mr. Jaladian's medical doctor. . . . C/o Cribbs was "deliberately indifferent" to Mr. Jaladian's serious medical needs and in violation of Mr. Jaladian's Eight Amendment Civil Rights.  Prisoner Official's forcing an inmate to do work beyond his physical capacity and against his doctors orders thus endangering his life, is a cause of action under 48 U.S.C. 1983 Civil Complaint.

(Complaint at 3-3A).

### Jurisdiction and Venue

This case raises a federal question under 42 U.S.C. § 1983.  Therefore, jurisdiction is predicated upon 28 U.S.C. § 1331.  Venue is proper in this court.

### Jury/Non-Jury

Defendant has requested trial by jury.

### Undisputed Facts

The following facts are undisputed:

1.   While housed at California State Prison - Solano (CSP-Solano) in 2003, plaintiff worked as a server in the dining hall.

2.   Plaintiff was issued a medical chrono in June 2003, which stated plaintiff needed to be assigned to light duty or clerical type work.

3.   While working in the dining hall on the morning of July 15, 2003, plaintiff lifted a milk crate, slipped in water on the floor, and fell.

More specifically, defendant sets forth the following as undisputed facts in his pretrial statement[1]:

---

[1] Plaintiff did not specifically object to these facts as being disputed in his pretrial statement, which was filed after defendant's pretrial statement.  However, in his opposition to the motion for summary judgment, filed November 21, 2005, plaintiff did object to defendant's statement of undisputed facts.  Interpreting his objections to those facts, it appears that plaintiff objects to the following statements as being disputed: 14, 18, 22, 25, 27, 29, and 33.  Plaintiff appears to claim that although it was not in his job description, he was in fact ordered to lift milk crates during his employment as a server, that he never told the physician he did not want to work anywhere, and that he continuously complained about performing duties not permitted by his medical chrono.

3

1. Sometime between 1975 and 1985, Jaladian injured his back after he fell from a horse.

2. Prior to incarceration, Jaladian was self-employed for 20 years as a window washer for high-rise buildings.

3. On January 22, 2003, Jaladian was received at Deuel Vocational Institution - Reception Center, following his conviction for five felonies.

4. On January 22, 2003, Jaladian prepared a health screening form which indicated that he did not have any physical disabilities or special health care needs.

5. A physical examination by a physician at the reception center on January 24, 2003, noted that Jaladian was not on medications and that he had minimal left thoracic scoliosis. The examining physician noted no medical restrictions for the work Jaladian could be assigned.

6. On March 3, 2003, Jaladian was transferred to the California State Prison - Solano (Solano).

7. On March 3, 2003, Jaladian prepared a health screening form which indicated that he did not have any physical disabilities or special health care needs.

8. Pursuant to Title 15 of the California Code of Regulations, section 3040, every able-bodied inmate in the custody of California Department of Corrections and Retaliation is obligated to work. Assignment may be to a full day of work, education, or other program activity.

9. On March 11, 2003, the classification committee at Solano cleared Jaladian for full duty.

10. On March 26, 2003, Jaladian was seen by a physician for complaints of abdominal, back, and left foot pain. On examination, the doctor noted that range of motion was limited to 50% on forward flexion. Single-leg reflex showed a tender left lower back, with symmetric reflexes in lower extremities. The assessment was low back pain of questionable

etiology. The plan was to treat the low back pain with Tylenol, 650 mg. a day, as needed for pain, for 30 days, and to obtain a lumbar X ray.

11. On April 3, 2003, an X ray of Jaladian's lumbar spine was performed.

12. On April 16, 2003, Jaladian was prescribed a back brace to help alleviate his lower back pain.

13. On April 22, 2003, Jaladian began working as a server in the CSP-Solano dining hall.

14. Jaladian's duties included passing out plastic eating utensils and 8-ounce cartons of milk, and wiping down tables when inmates had finished eating.

15. Jaladian's duties were light duty and the easiest duties in the dining hall.

16. Jaladian's duties as a server were consistent with his medical chronos.

17. Jaladian's duties did not require lifting more than 15 pounds.

18. Servers do not have to stack or move full crates of milk.

19. Milk crates and crates of plastic eating utensils are stacked early in the morning by inmate workers called linebackers.

20 The server's job description states that the servers are to advise a linebacker when food items are running short.

21. A full crate of milk contains 50 eight-ounce cartons and weighs approximately 25 pounds.

22. Between April 22 and July 14, 2003, Jaladian never lifted a crate.

23 On April 25, 2003, Jaladian complained that he could not work in the dining hall because he felt nauseous around the smell of food. Jaladian also indicated that he was suffering from chronic low back pain. The doctor noted that x-rays had shown moderate to advanced degenerative disc disease. Jaladian was diagnosed with low back pain, degenerative disc disease, and peptic ulcer disease.

24. On April 30, 2003, Jaladian was seen for follow-up on his back pain and a

complaint of vomiting in the morning, despite taking Protonix for his peptic ulcer disease. The doctor noted that Jaladian was wearing a back support to help with back discomfort. The doctor ordered a gastroenterology consultation and endoscopic evaluation.

25. On June 24, 2003, Jaladian complained of ulcer pain and associated daily vomiting. Jaladian said that he worked in the kitchen and had an "adversity" to kitchen odors and did not want to work there, or anywhere else.

26. On June 26, 2003, Jaladian was provided with a chrono which indicated that Jaladian should be assigned light duty, not work around fumes or chemicals, and not lift more than 15 pounds. The chrono indicated that Jaladian could perform clerical or porter-type work.  A medical chrono for a back brace was renewed the same day.

27. Between June 26 and July 15, 2003, Jaladian did not submit a grievance or request for disability accommodation, complaining that his chrono restricted him from performing the duties as a server in the dining hall.

28. On July 15, 2003, Jaladian and inmate Loving (H-04736) were serving milk at breakfast.

29. On July 15, 2003, at least one inmate linebacker, who was responsible for stacking and moving milk crates, was present.

30. At approximately 6:50 a.m. on July 15, 2003, Jaladian lifted a crate of milk. As he was moving the crate, Jaladian slipped on some water on the floor, lost his balance, and fell.

31. Cribbs was not present while Jaladian lifted the crate of milk.

32. At approximately 7:00 a.m., Jaladian was treated at the medical clinic at Solano.

33. On July 22, 2003, Jaladian was seen by Dr. Rallos, complaining of continued left low back pain which radiated down his left leg. Jaladian told Dr. Rallos that he felt he should not be working. Dr. Rallos' assessment was chronic back pain exacerbated by a fall.

34. On July 25, 2003, Jaladian requested to be medically unassigned from his position in the dinning hall. Jaladian was examined by Dr. Hoover. Later that day, Hoover completed a disability verification, finding that there was no evidence that Jaladian was permanently disabled.

35. On September 1, 2003, Jaladian was assigned to Adult Basic Education 1. However, he only stayed in that assignment for two days.

36. On October 22, 2003, Jaladian was diagnosed with chronic back pains with degenerative type central stenosis. Dr. Rallos also cleared Jaladian for clerical work.

37. On November 23, 2003, Jaladian returned to his position in the dinning hall, but he stayed there only six days.

38. On December 21, 2004, Jaladian was again moved to Adult Basic Education, but he remained there only nine days.

39. On January 25, 2005, Jaladian returned to Adult Basic Education, but refused to take a test because he did not understand English. He then claimed that he was sick to his stomach and left the room six times "to throw up" rather than taking the test. He was so disruptive that he had to be asked to leave the room.

40. Jaladian was ordered to return the next day, but staff reported later that on January 26, 2005, Jaladian was observed dancing with his cane in front of his housing unit and appeared to be fine.

41. On February 5, 2005, Jaladian left his education assignment.

Plaintiff specifically states the following facts are undisputed:

1. It is undisputed that Plaintiff Jaladian reported to his [job] assignment in the kitchen on 2nd Watch shift on Facility II, on July 15, 2003.

2. It is undisputed that Plaintiff Jaladian showed Defendant Cribbs his medical chrono that stated that Plaintiff Jaladian had degenerative chronic back pain, severe gastroesophageal reflex, and stiffness of both hands.

3. It is undisputed that Plaintiff Jaladian's doctor ordered that he was to be assigned "light duty work," with "no" standing more than 20 minutes working around fumes, "no" squatting, "no" stooping, and "no" lifting more than 10 pounds.

4. It is undisputed that Plaintiff Jaladian injured himself on July 15, 2003, while working in the kitchen under the supervision of Defendant Cribbs.

5. It is undisputed that Defendant Cribbs read and was aware of Plaintiff Jaladian's medical chrono and medical restrictions.

6. It is undisputed that Plaintiff Jaladian's doctor ordered that Plaintiff be assigned clerical or porter type work.

Disputed Facts

According to defendant, the following facts are in dispute:

1. Whether Defendant ordered Plaintiff to stack milk crates.

2. Whether Defendant's conduct caused Plaintiff to suffer an injury.

3. The extent and nature of Plaintiff's injuries, if any.

According to plaintiff, the following facts are in dispute:

1. Defendant Cribbs did in fact order Plaintiff Jaladian to perform work well out of the medical restrictions of Plaintiff's doctor's order.

2. Defendant Cribbs ordered Plaintiff to stack full crates of milk well over 20 pounds.

3. Defendant Cribbs violated Plaintiff's doctor ordered medical chrono.

4. Defendant Cribbs was deliberate[ly] indifferent to Plaintiff's serious medical needs in violat[ion] of Plaintiff['s] Eighth and Fourteenth Amendment Civil Rights.[2]

---

[2] Plaintiff also states the following are disputed facts, but these facts relate to claims which were adjudicated in defendant's favor through summary judgment: Defendant Cribbs took months to fill out Plaintiff's worker compensation papers; Defendant Cribbs on November 25, 2003, fired Plaintiff because of Plaintiff's disabilities; and Defendant Cribbs retaliated against Plaintiff because Plaintiff requested that Defendant Cribbs file a workers compensation claim.

8

Disputed Evidentiary Issues

Plaintiff objects to the use of evidence based upon or containing inadmissible hearsay or information that is irrelevant, immaterial or incompetent.

Defendant objects to plaintiff's use of any evidence regarding the claims previously adjudicated in defendant's favor through summary judgment including (1) Cribbs' conduct after July 15, 2003; (2) the conduct of former defendants Hughes, Rodriguez, Butler, Chandler, Grannis and Brown; (3) plaintiff's retaliation claim; and (4) plaintiff's American's with Disabilities Act claim. Defendant states that use of this evidence would confuse, mislead and prejudice the jury.

Relief Sought

Plaintiff seeks compensatory damages in the amount of $500,000 and punitive damages to be determined by the court.

Defendant seeks judgment in his favor, as well as costs and fees.

Legal Issues[3]

The issue in this case is whether defendant Cribbs demonstrated deliberate indifference to a serious medical need, in violation of plaintiff's Eighth Amendment rights.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of

---

[3] The only remaining claim in plaintiff's complaint is his Eighth Amendment violation claim. In plaintiff's pretrial statement, he also references his retaliation claim. However, defendants' motion for summary judgment was granted as to plaintiff's retaliation claim. Therefore, this claim has already been adjudicated, and is no longer an active claim.

1  life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and
2  wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the
3  Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

4  Deliberate indifference to a prisoner's serious illness or injury, or risks of serious
5  injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at
6  105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental
7  health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is
8  sufficiently serious if the failure to treat a prisoner's condition could result in further significant
9  injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d
10 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).
11 Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition
12 is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily
13 activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See
14 Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

15 The requirement of deliberate indifference is less stringent in medical needs cases
16 than in other Eighth Amendment contexts because the responsibility to provide inmates with
17 medical care does not generally conflict with competing penological concerns.  See McGuckin,
18 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to
19 decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.
20 1989).  The complete denial of medical attention may constitute deliberate indifference.  See
21 Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical
22 treatment, or interference with medical treatment, may also constitute deliberate indifference.
23 See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also
24 demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

25 The parties are directed to brief the elements, standards, defenses, and burden of
26 proof relevant to this case by filing trial briefs with this court no later than 14 calendar days prior

to the date of trial in accordance with Eastern District of California Local Rule 16-285.

### Counsel

Plaintiff has previously requested the appointment of counsel, which has been denied because the court did not find exceptional circumstances in this case to warrant the request for voluntary assistance of counsel pursuant to 28 U.S.C. §1915(e)(1). Plaintiff renews his request for counsel in his pretrial statement. Again, the court does not find the required exceptional circumstances in the present case. Plaintiff's request is therefore denied.

### Witnesses

Plaintiff intends to testify on his own behalf. Additionally, plaintiff intends to call the following inmate witnesses, who have agreed to testify at trial:

AMIEN ABUSAFIEH (T-79472)

HARRY ROBINSON (E-05450)

MCKELLAR (K-04599)

MICHAEL ALDERSON (T-58187)

BRYAN LOVING (H-04736)

However, plaintiff simply lists the above named witnesses in his pretrial statement. He has not filed a separate motion for issuance of a writ of habeas ad testificandum for any inmate witness's appearance at trial nor did he provide the address of any such witness, or file an affidavit showing a willingness of each witness to testify and stating that the prospective witness has actual knowledge of relevant facts in this matter. Plaintiff was informed of the proper procedure to follow to obtain the attendance of incarcerated witnesses in the further scheduling order filed September 14, 2006. The Clerk of the Court will be directed to provide plaintiff with another copy of the further scheduling order. If plaintiff wants his incarcerated witnesses to attend the trial, plaintiff needs to file the appropriate motions no later than January 22, 2008. Plaintiff is referred to the further scheduling order for further information on filing the appropriate motions.

Plaintiff intends to call the following non-inmate witnesses, employed at CSP-Solano, who refuse to testify voluntarily:

>CHIEF MEDICAL OFFICER  A. TRAQUINA
>
>ASSOCIATE WARDEN  W.A. RODRIGUEZ
>
>CCI  C.A. HUGHES
>
>ASSOCIATE WARDEN  C.D. BROWN
>
>CCII  BUTLER
>
>C/O  R. CHANDLER
>
>ASSOCIATE WARDEN  KATHLEEN L. DICKINSON
>
>APPEAL COORDINATOR  S. CERVANTES
>
>WARDEN AT SALINAS VALLEY STATE PRISON  A.P. KANE

Plaintiff is again referred to the further scheduling order for information on the procedures to obtain the attendance of unincarcerated witnesses including the process for submitting a subpoena for service by the United States Marshal.

Plaintiff also requests the ability to interview his witnesses prior to trial. This request will be addressed at the trial confirmation hearing.

Defendant intends to testify on his own behalf. Additionally, defendant intends to call the following witnesses:

>B. HILL, correctional officer, Solano
>
>R. ABEYTA, correctional officer, Solano;
>
>P. FROST, correctional officer, Solano;
>
>J. FISHER, correctional officer, Solano;
>
>M. BAUMGARTNER, correctional officer, Solano;
>
>M. WILLIAMS, correctional officer, Solano;
>
>T. JACKSON, correctional officer, Solano;
>
>S. COTTER, correctional officer, Solano;

1           T. HOLDEN, correctional officer, Solano;

2           R. CHANDLER, correctional officer, Solano;

3           C.A. HUGHES, correctional counselor, Solano;

4           COONEY, correctional officer, Solano;

5           BUCKNER, correctional officer, Solano;

6           M. ALANDER, instructor, Solano;

7           A. TRAQUINA, M.D., Chief Medical Officer, Solano;

8           T. RALLOS, M.D., physician, Solano;

9           S. OBEDOZA, M.D., physician, Solano;

10          G. HOOVER, D.O., doctor of osteopathy, Solano;

11          M. SWEIGERT, custodian of Jaladian's central file records, Solano[2/];

12          J. JOHNSTON, custodian of Jaladian's central file records, Solano;

13          G. STRINGER, custodian of Jaladian's medical records, Solano;

14          L. MEFFORD, custodian of Jaladian's medical records, Solano;

        The court makes the following orders concerning witnesses:

        1.    The Clerk of the Court is directed to provide plaintiff a copy of the further scheduling order (Doc. 48) filed on September 14, 2006;

        2    If plaintiff wants his incarcerated witnesses to attend the trial, plaintiff needs to file the appropriate motions no later than January 22, 2008;

        3.    Each party may call any witnesses designated by the other;

        4.    No other witness will be permitted to testify unless: (a) the party offering the witness demonstrates that the witness is for the purpose of rebutting evidence which could not be reasonably anticipated at the pretrial conference, or (b) the witness was discovered after the pre-trial order is issued and the proffering party makes the showing outlined below;

        5.    Upon discovery of witnesses following issuance of this pre-trial order, the party shall promptly inform the court and the opposing party of the existence of the unlisted

witnesses so that the court may consider at trial whether the witnesses shall be permitted to testify;

  6. Such newly discovered witnesses will not be permitted to testify unless: (a) the witnesses could not reasonably have been discovered prior to pretrial; (b) the court and the opposing party were promptly notified upon discovery of the witnesses; (c) if time permitted, the party proffered the witnesses for deposition; (d) if time did not permit, a reasonable summary of the witnesses' testimony was provided to the opposing party.

  <u>Exhibits</u>

  Plaintiff anticipates offering the following exhibits into evidence:

1. Plaintiff's complaint, original.
2. Victims Compensation Government Claim #G545543.
3. Director Level Appeal, SOL-0303603
4. Medical chrono dated October 22, 2003, and October 23, 2003.
5. Medical chrono dated June 24, 2003.
6. Memorandum dated December 11, 2003, by Kathleen L. Dickinson.
7. Memorandum dated January 13, 2004, by A.O. Kane.
8. Memorandum dated December 30, 2003, by C.D. Brown.
9. Appeals screening form dated January 7, 2004, by T. Dickinson.
10. Appeals screening form dated April 1, 2004, by S. Cervantes.
11. Response from Sacramento Appeal Offices dated March 23, 2004, by N. Grannis.
12. Reasonable modification or accommodation request, CSP-03-03402, stamped received April 1, 2004.
13. Rules Violation Report dated December 2, 2003, by C/O R. Chandler.
14. Employee claim for worker compensation benefits dated December 10, 2003.

15. Memorandum dated December 11, 2003, by W.A. Rodriguez.
16. Response from Sacramento Appeals Branch dated February 9, 2004, by N. Grannis;
17. Letter to N. Grannis from plaintiff dated January 29, 2004.
18. Appeal filed by plaintiff dated January 20, 2004.
19. Declaration by Amien Abusafieh dated April 13, 2004.
20. Declaration by Harry Robinson (E-05450) dated December 8, 2005.
21. Declaration by McKellar (K-04599) dated July 15, 2003.
22. Declaration by Michael Alderson (T-58187) dated July 15, 2003.
23. Declaration by Bryan Loving (H-04736) dated July 15, 2003.
24. Appeal filed by plaintiff dated November 27, 2003.

Defendant anticipates offering the following exhibits into evidence:

1. Jaladian's Chronological History of Incarceration;
2. Jaladian's Inmate Job Description, Dinning Hall Worker 4, dated April 22, 2003;
3. Jaladian's Inmate Job Assignment History;
4. Jaladian's claim to the State of California Board of Control (Victims Compensation and Government Claims Board), dated April 7, 2004;
5. Jaladian's Declaration, dated November 15, 2005;
6. Plaintiff's Opposition to Defendant's Motion for Summary Judgment, dated November 15, 2005;
7. Plaintiff's Response to Defendant's Reply to Opposition to Motion for Summary Judgment, dated December 8, 2005;
8. Declaration of inmate McKellen, undated;
9. Declaration of Bryan Loving, undated;
10. CDC 602 Appeal (No Log Number), dated July 25, 2003;

11. Correctional Employee's Multi-Purpose Worksheet from R. Chandler, dated November 25, 2003;

12. CDC 128G from C.A. Hughes, dated December 11, 2003;

13. CDC 128B from M. Alander, dated January 26, 2005;

14. Health Screening Form, dated January 22, 2003;

15. Reception Center Physical Examination, dated January 24, 2003;

16. Health Screening Form, dated March 3, 2003;

17. Interdisciplinary Progress Note, dated March 26, 2003;

18. Radiology Report, dated April 3, 2003;

19. Interdisciplinary Progress Note, dated April 16, 2003;

20. Physician's Orders, dated April 16, 2003;

21. Interdisciplinary Progress Note, dated April 25, 2003;

22. Physician's Orders, dated April 25, 2003;

23. Interdisciplinary Progress Note, dated April 30, 2003;

24. Interdisciplinary Progress Note, dated June 23, 2003;

25. Physician's Orders, dated June 24, 2003;

26. Medical Chrono, dated June 24, 2003;

27. Medical Chrono, dated June 26, 2003;

28. Medical Report of Injury or Unusual Occurrence, dated July 15, 2003;

29. Medical Chrono, dated October 22, 2003;

30. Abstracts of judgment for felony convictions of Plaintiff and any inmate witnesses he may call;

31. Declaration of M. Sweigert, custodian of Jaladian's central file records;

32. Declaration of J. Johnston, custodian of Jaladian's central file records;

33. Declaration of G. Stringer, custodian of Jaladian's medical records;

34. Declaration of L. Mefford, custodian of Jaladian's medical records;

        The court makes the following orders concerning exhibits:

1. The parties are directed to bring an original and three copies of each exhibit to trial;

2. The parties shall be prepared to exchange copies of their exhibits on or before the first day of trial;

3. Plaintiff will use numbers to mark exhibits;

4. Defendant will use letters to mark exhibits;

5. No other exhibits will be permitted to be introduced unless: (a) the party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence which could not have been reasonably anticipated; or (b) the exhibit was discovered after the issuance of this order and the proffering party makes the showing required below;

6. Upon the discovery of new exhibits, the parties shall promptly inform the court and opposing party of the existence of such exhibits so that the court may consider at trial their admissibility;

7. Such exhibits will not be received unless the proffering party demonstrates: (a) the exhibits could not reasonably have been discovered earlier; (b) the court and the opposing party were promptly informed of their existence; (c) the proffering party forwarded a copy of the exhibit(s) (if physically possible) to the opposing party;

8. If exhibits may not be copied, the proffering party must show that he has made the exhibits reasonably available for inspection by the opposing party; and

9. The original exhibits become the property of the court for purposes of trial.

<u>Stipulations</u>

At this time the parties have reached no stipulations.

<u>Amendments and/or Dismissals</u>

None anticipated. The court granted defendants' motion for summary judgment in part on September 11, 2006. The only remaining claim is plaintiff's claim that his Eighth

1  Amendment rights were violated on July 15, 2003.

<u>Settlement</u>

Plaintiff does not address the possibility of settlement, but defendant indicates that he does not expect settlement negotiations between the parties, or a court settlement conference would be helpful.

<u>Attorneys' Fees</u>

Plaintiff does not address attorney fees, but defendant states plaintiff has not incurred any attorney fees, and the defendant does not anticipate seeking any attorney fees if he prevails.

<u>Pre-Trial Motions</u>

None addressed.

<u>Trial Confirmation Hearing</u>

A trial confirmation hearing, to be held by videoconference before Judge Karlton, is hereby set for February 11, 2008, at 11:15 a.m. To facilitate plaintiff's participation in that hearing, the Clerk of the Court shall serve a copy of this order on the litigation coordinator at plaintiff's place of confinement as follows:

> **Larry Mackin**
> **Litigation Coordinator**
> Pleasant Valley State Prison
> P.O. Box 8500
> Coalinga, CA 93210

Should the parties have any technical questions regarding the videoconference, they should contact the court's Telecommunications Systems Manager, Andre Carrier, at (916) 930-4223.

<u>Trial Date and Estimated Length of Trial</u>

A jury trial is hereby confirmed for commencement on May 13, 2008, at 10:30 a.m., in Sacramento, California, in Courtroom 4, before Hon. Lawrence K. Karlton, United States District Judge. The parties have not provided estimates for the length of trial.

///

<u>Proposed Voir Dire and Jury Instructions</u>

The parties are referred to Eastern District of California Local Rules 47-162(a) and 51-163(a) regarding proposed voir dire and proposed jury instructions, respectively. The provisions of said local rules notwithstanding, the parties shall file proposed voir dire and proposed jury instructions, if any and if they have not already done so, not later than 14 calendar days before the date set for trial.

<u>Objections to this Pre-Trial Order</u>

If no objections are filed within 15 days of the date of service of this order, the order will become final without further order of the court. Once final, no objections to this pre-trial order will be considered. If objections are filed, they will be addressed upon the commencement of trial.

IT IS SO ORDERED.

DATED: December 6, 2007

　　　　　　　　　　　　　　　　　　／s／ Craig M. Kellison
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE